HERRICK (THAYER v.). See Case No. 13,868.

HERRIET (BOWEN v.). See Case No. 1,722.

## Case No. 6,422.

HERRING et al. v. GAGE et al.

[15 Blatchf. 124; 3 Ban. & A. 396.] [1]

Circuit Court, N. D. New York. Aug. 10, 1878. [2]

PATENTS—INFRINGEMENT—AWARD OF DAMAGES.

1. The findings of the master, in ascertaining the profits made by the defendants, in infringing letters patent, sustained.

2. The case of Mowry v. Whitney, 14 Wall. [81 U. S.] 620, explained.

3. In the present case, it was *held*, that the proper inquiry was, not what saving the defendant had made by using the patented device, over the saving which he might have made if he had used any or all of various other devices, but what saving he had made directly by using the patented device.

[Cited in Garretson v. Clark, Case No. 5,250.]

4. Interest on the cost of a device, and the cost of power, are to be allowed as deductions from profits, only when it is shown they have been paid or incurred as debts.

5. A defendant cannot avail himself of the defence that he has not marked or labelled the infringing machines as patented, and especially so when no such defence is set up in the answer.

[Cited in Dunlap v. Schofield, 152 U. S. 246, 14 Sup. Ct. 578.]

6. In a suit against three defendants, it is proper to award against all three the profits made by them jointly, while partners, and against two of them the profits they made after their partnership with the third defendant was dissolved, and while they were using the patented invention in conjunction with a fourth person, not a defendant.

[This was a suit for infringement by James W. Herring and others against William G. Gage and others. An interlocutory decree was entered for the plaintiffs, and the cause referred to a master for an accounting. Case No. 6,424.]

Edwin S. Jenney and James A. Allen, for plaintiffs.

H. C. Howe, for defendants.

WALLACE, District Judge. This case comes here upon exceptions by both parties to the report of the master to whom it was

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 3 Ban. & A. 396; and here republished by permission.]

[2] [Reversed in 107 U. S. 640, 2 Sup. Ct. 819.]

referred, by interlocutory decree [Case No. 6,424], to take proofs and ascertain the profits received by the defendants from the use of the device described in the first claim of the letters patent [No. 4,712] as reissued to John Deuchfield, January 16th, 1872, being for an improved arrangement of means for cooling and drying meal. The master has found, that the defendants have used the device from January 16th, 1872, and, by the use of the device, have saved flour to the amount of one barrel to 600 made, and that, for the period between April 1st, 1872, and May 10th, 1876, the saving was, in all, 191 $^{11}/_{100}$ barrels, of the value of $1,441 84. He also finds, that, after May 10th, 1876, (at which time the defendants dissolved partnership,) two of the defendants, William G. Gage and Frederick A. Gage, continued to use the device until November 1st, 1876, and that these two defendants, in conjunction with one Henderson, continued to use it from November 1st, 1876, until October 3d, 1877. The flour saved by the use of the device after the defendants dissolved partnership, and up to October 3d, 1877, was 57 $^7/_{10}$ barrels, of the value of $376 97. The master had also found, that this saving accrued to the defendants over and beyond any saving which they could have obtained from any other successful device for cooling and drying meal, known and open to use by them. He has deducted the cost of introducing the device into the defendants' mill and the cost of keeping it in repair, and ascertained the profit actually made after such deduction. He has allowed the complainants, however, only the profits made by the defendants down to May 10th, 1876.

The first exception of the defendants raises the point, whether the master's report is sustained by the proofs, as to the time when the defendants commenced to use the Deuchfield device. The proofs show a conflict as to the fact whether the device was introduced into the Riverside Mills (the defendants' mills) prior to 1873–4, but the unequivocal statement of the defendant William G. Gage is sufficient to justify the conclusion of the master, and I am unable to say that it should not prevail over the testimony of his miller, and the other testimony that might justify a different finding. This exception is, therefore, overruled.

The next exceptions of the defendants allege that the master has erred in stating the account between the parties as to the number of barrels of flour manufactured by the defendants during the period in question, and as to the price received for flour manufactured. The defendants neglected to state an account of the number of barrels of flour manufactured, or of the price received by them, for the period between January 16th, 1872, and April 1st, 1872, and the master has failed to report upon the number of barrels manufactured during this period. The master had a right, in the absence of a statement by the defendants, to assume that they manufactured, during this period, at the same rate as during the rest of the year, and if, acting on that assumption, he had charged them with the proportion that period bears to the entire year, they would have been charged with a larger sum as profits than they are now charged with, assuming that the master has erred as claimed. It would not benefit the defendants if the report were sent back for revision, and the error pointed out by the exceptions is of inconsiderable moment. The master's error costs the defendants something less than $30, but, if he had charged them with the product between January 16th, 1872, and April 1st, 1872, it would have amounted to over three times that sum. The defendants also overlooked the fact that there was other evidence before the master of the product of the mill than that contained in the account rendered by the defendants. These exceptions will, therefore, be disregarded.

By further exceptions, the defendants insist that the master's findings, as to the actual savings realized by the defendants by the use of the device, is not sustained by the evidence. This finding is based, in part, upon the testimony of various experts, who were familiar with the practical working of the device in other mills, and who were permitted to state the quantity of flour lost when the device was not used, thus estimating the saving realized under their observations, and basing upon that their opinion of the saving ordinarily gained by the use of the device. The conditions under which the device was used differed in the different instances observed by the witnesses. It is contended that this testimony is not entitled to consideration. To this I cannot agree. Of course, the ultimate inquiry was only as to the saving made by the defendants. It was impracticable to ascertain this by direct evidence, because the defendants did not keep any account relative thereto. They and their witnesses gave their opinions, with the data upon which they were based. The complainants gave the best evidence which was attainable from the nature of the case. It was peculiarly the province of the master to sift out what was valuable, and reject what was not, and, by an analysis of the testimony, to ascertain what the saving would be when the device was used under conditions similar to those which obtained in the defendants' mill. I am not satisfied that he has not done this with discrimination, and am not convinced that the defendants have any ground of complaint.

The next exception of the defendants brings up what I deem the most important question in the case. A large amount of testimony was given tending to show that other devices were known, were open to use, and had been used by millers, which were an equivalent for the Deuchfield device, and by the use of which a saving would result equal to that

realized by the use of the complainants' device. The master has found that the saving made by the defendants was over and beyond that which they could have made by the use of any other device, and the defendants insist that this finding is not supported by the proofs. The answer to this, in my judgment, is, that the exception rests on a misconception of the rule of law by which the profits, in such a case, are to be ascertained. It is said, in Mowry v. Whitney, 14 Wall. [81 U. S.] 620, 651, that the question to be determined, in finding the profits made by an infringer, by the use of the patent infringed, is, "What advantage did the defendant derive from using the complainant's invention, over what he had in using other processes then open to the public, and adequate to enable him to obtain an equally beneficial result;" and this language, probably, has given rise to the theory by which both the complainants and the defendants have been governed in the production of their testimony, and which has also been adopted by the master. As a consequence, a vast amount of time has been devoted, by the complainants and the defendants, in producing testimony relative to the efficiency and value of the various devices which the defendants might have employed for the cooling and drying of meal, as a substitute for that of the complainants, and the comparative merits of each with the complainants' device, with a view to ascertain what additional saving was made by the use of the complainants' device, beyond that which might have been made had the defendants used any or all of the various other devices.

In settling an account between a patentee and an infringer, the real inquiry is: What is the advantage which the infringer has derived from his use of the invention? If he has derived a profit attributable directly to the employment of the invention, that profit belongs to the patentee and is the measure of his recovery. Here, the defendants saved a considerable quantity of flour by the use of the complainants' property, which, until they used it, had been lost. Their gain is directly traceable to the use of the invention. How is it important to ascertain what they might have saved, if, instead of using the complainants' property, they had used some other device? How are they in a better position than they would be if there had been a different device which was patented, and they had acquired the right to use it from the patentee, but, instead of using it, saw fit to employ the complainants' device? Mowry v. Whitney [supra] was a case where the entire profit of the manufacture of an article made by the patented process was given upon an accounting, when that profit was largely due not to the advantage derived from the patented process but from that of other processes actually used by the manufacturer, and which he had the right to use; and what was said in that case, pertinent to such a state of facts,

is not to be assumed as the enunciation of the rule where the profit has been made directly by the use of the patentee's device. Such a rule would impose an extraordinary burden upon a patentee, because it would require him, when seeking for redress, to explore the whole realm of practical and theoretical mechanism, to ascertain and demonstrate that what was realized by the wrongful appropriation of his invention could not have been made by the use of any other device or substitute which the infringer might have employed. The infringer is, at the election of the patentee, treated as a trustee, and, as such, required to account for the profits actually made by the use of the patentee's property. It would be a novel defence to permit a trustee who has made a profit by the use of the money or property of his cestui que trust, to show that he would have made an equal profit if he had used the money or property of a third person, or if he had used his own money or property. It was quite unnecessary, in my judgment, to enter into any investigation of the savings which the defendants might have realized if they had used some other than the complainants' device, and the exception to the master's finding upon the question cannot avail the defendants.

Further exceptions of the defendants present the questions whether the master erred in not deducting the interest on the cost of the device from the aggregate of profits, and also in not deducting the value of the power employed in using the device. Undoubtedly, interest and cost of power enter into the account of profits to be ascertained from a given manufacture. Profit is the gain made upon any investment when both receipts and payments are taken into the account. Where interest has been paid upon the capital invested, or where it is to be paid upon borrowed capital, it should be allowed in estimating profits; but I am not aware of any rule which requires that it should be deducted where it has not been actually paid or incurred. The allowance for cost of power is to be determined by the same rule. If expense has been actually incurred for power, it should be deducted. But, if interest or expense for cost of power has not been incurred, there is no more reason why there should be a deduction therefor from the profits, than that there should be for the personal service of the infringer in conducting the business. It was not shown that any interest, or any sum for cost of power, had been paid, or any indebtedness incurred therefor. The master was correct in not making any such allowance.

It is insisted, in the argument for the defendants, that no damages are recoverable, because the device was not labelled or marked as patented, under section 4900 of the Revised Statutes. The statute has no application to a case like this, where the defendants were themselves the persons who made and used the device. If it had, the defendants cannot avail themselves of the defence, be-

cause they have not set it up in their answer. Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 788.

This disposes, in substance, of all the exceptions of the defendants. In conclusion, it is proper to say, that the proofs show a case where it is peculiarly proper that the court should repose upon the master's findings upon the facts. Such is the conflict between the witnesses upon nearly all of the issues entering into the question of the amount due the complainants, that while I should have been better satisfied if the profits had been estimated at fifty dollars per annum for each run of stones using the device, it would be quite unsafe to say that the master has not arrived at judicious and correct conclusions. The defendants' exceptions are overruled.

The complainants insist, by their exceptions, that they are entitled to recover not only the profits made by the defendants during the time all of them were using the device, but, also, as against the defendants William G. Gage and Frederick A. Gage, the further amount made while they were using the device jointly or in conjunction with Henderson. In this I think they are correct. The defendants are tort-feasors, and each is liable for the whole damages. The right of the party injured to look to either as well as to all of the defendants for the whole damage he has sustained, is not confined to a resort to a court of law, but is recognized and enforced when he resorts for his remedy to a court of equity. It is the peculiar province of equity, when it has acquired jurisdiction of the subject matter of a controversy, to award in the suit full and complete relief between all parties. The master has found the net profit arising from the use of the device by William G. Gage and Frederick A. Gage, down to the date of the order of reference, October 3d, 1877, to be $281 97, in addition to the profits which accrued to all the defendants jointly. This should have been allowed to the complainants, and is now allowed.

The decree will provide for a recovery for the complainants, as against all the defendants, of the sum of $1,161 84, and as against the defendants William G. Gage and Frederick A Gage, for the further sum of $281 97.

[NOTE. An appeal was then taken by the defendants to the supreme court, where the decree was reversed, and the bill dismissed, in an opinion by Mr. Justice Gray, who said that the new claim in the reissue was invalid because it was merely a combination of some of the elements of the original claim, and, as defendants only used the new claim, there could be no infringement. 107 U. S. 640, 2 Sup. Ct. 819.

[For another case involving this patent, see Bignall v. Harvey, 4 Fed. 334.]