SPRINGFIELD FURNACE CO. et al. v. MILLER DOWN-DRAFT FUR-NACE CO. et al.

(Circuit Court, E. D. Missouri, E. D.   June 26, 1899.)

No. 4,075.

1. PATENTS—ANTICIPATION BY FOREIGN PATENT.
   If the description and drawings of a foreign patent are sufficiently full, clear, and exact to enable persons skilled in the art or science to which they relate to readily practice the invention of a subsequent United States patent, then the latter patent is void because of anticipation.

2. SAME—DOWNWARD AND UPWARD DRAFT FURNACES.
   The Hawley patent, No. 447,179, for an improvement in combined downward and upward draft furnaces, discloses no patentable invention, in view of the prior state of the art, except what may be involved in the zigzag arrangement of the bars of the upper grate, and as to this feature it was anticipated by the Barlow, Edmeston & Beeley English patent of 1868.

This was a suit in equity by the Springfield Furnace Company and another against the Miller Down-Draft Furnace Company and others for alleged infringement of a patent.

B. F. Rex and A. C. Fowler, for complainants.

Louis K. Gillson and Emil Starek, for defendants Miller Down-Draft Furnace Co. and W. H. Miller.

Bakewell & Cornwall, for defendants Richard Garstand and Shultz Belting Co.

ADAMS, District Judge.   This is a suit for an alleged infringement of letters patent of the United States No. 447,179, dated February 24, 1891, granted to Melville C. Hawley, for a new and useful improvement in furnaces.   There are three claims in the patent, the first of which only is in controversy here.   That reads as follows:

"In a combined downward and upward draft furnace, the combination of the lower upward-burning grate, an upper downward-burning grate, an intermediate combustion chamber and escape flue leading from said combustion chamber, the bars in said upper grate being spaced widely apart as described, and at each end thereof connecting with the water chamber, in turn connected with the boiler, and the bars in said lower grate being spaced closer together than are the bars of said upper grate, substantially as described."

Claim 2 of the patent differs from claim 1 only in the addition of the element of having the bars in the upper grate spaced widely apart, and forming a series of zigzag spaces; in other words, the zigzag arrangement of the bars is the distinguishing difference between claim 2, which is not alleged to have been infringed in this case, and the first claim, which is alleged to have been infringed.   The defendants have not employed the zigzag arrangement at all, and hence, if the first claim is limited to a zigzag arrangement of the bars of the upper grate, the defendants, not employing such arrangement, are clearly not guilty of infringement.   It is contended that because the

words "as described" appear immediately after the element respecting the bars in the upper grate being spaced widely apart in the first claim, and because the drawings referred to show the zigzag arrangement, and the description of the patent deals with this zigzag arrangement, therefore the reference to the description and drawings in claim 1 necessarily makes the before-mentioned zigzag arrangement an element of that claim. A strong argument has been made, not only from the language of the specifications and claims, but also from a consideration of the contents of the file wrapper, that complainants' invention, as disclosed in the first claim, as well as the second, is limited to the zigzag arrangement of the bars of the upper grate, and it may be that such is the true construction, but I have reached so satisfactory a conclusion upon other phases of the case that I will not express any positive opinion as to whether the claim in controversy is limited as claimed. There are several patents and publications pleaded in this case as anticipations of the invention of the patent in suit, and among them is the English Barlow, Edmeston & Beeley patent of 1868, and it is contended that all the elements of claim 1 of the patent in suit are found in this English patent. A brief consideration, therefore, of this contention is necessary. Claim 1 of the patent in suit is for a combination of elements "in a combined downward and upward draft furnace," as follows: (1) A lower upward-burning grate; (2) an upper downward-burning grate; (3) an intermediate combustion chamber; (4) an escape flue, leading from the combustion chamber; (5) the bars in the upper grate spaced widely apart as described; (6) said upper grate connected at each end thereof with a water chamber, in turn connected with the boiler; (7) the bars in the lower grate spaced closer together than are the bars in the upper grate. After a careful scrutiny of the nature, description, and operation of the invention, as stated and shown in the English patent referred to, I am satisfied that all the elements of the claim involved in this suit are there found, operating substantially in the same way, and calculated to produce the same results. It was claimed in the argument for complainants that the particular novelty found in the patent in suit consisted in spacing the water bars of the grate "widely apart" so as to permit the partially burned fuel fed onto that grate to fall through the spaces, drop upon the lower grate, and thus feed the fire upon it, and that this particularly novel feature of complainants' patent is not found, or its invention described, in the English patent referred to. It seems to me that this feature, namely, the wide separation of the water bars in the upper grate, is fairly disclosed in the drawings of the English patent, and is also necessarily involved in the operation of the device as described in that patent. The function which might be discharged by the widely-separated bars of the English patent is obviously the same as that claimed to be performed by the widely-spaced bars of the patent in suit, and, if the same is not as specifically described in the English patent as it might be, it is obviously because the operation of the combination there disclosed was then well known to the art, and needed no description. It appears that in the Robinson patent in evidence—the same being an English patent of 1854—the importance of wide

spacing of the bars of the upper grate was fully appreciated, and its utility as a device for feeding the fire on a lower grate was then well known. It is true, the Robinson patent combined a plurality of downwardly-burning grates, and, of course, located the draft flue below them, while the patent in suit combines one down-draft with an up-draft grate, and locates the escape flue between them. This difference in construction involves but a duplicating of the downward-burning grates; otherwise it seems similar in principle to the invention of the patent in suit,—enough so, at any rate, to afford valuable information in ascertaining the state of the art. A portion of the specification in the Robinson patent reads as follows:

"The coal or other fuel is supplied to the top or upper tier, and the bars or tubes are so arranged that the spaces between them are wider than in the next tier, and that is also wider than the spaces in the tier below, so that the fire passing through the top or first set of grates will fall on and operate for the time on the second set, and then fall through to the third, and so on. The air necessary for combustion is also supplied at the top or upper part of the apparatus above the fire, instead of under it as heretofore. By which contrivance I obtain a downward draft or current through the whole series of gratings, which causes the smoke from the top or green fuel to pass through its own and also through the red fires of the succeeding tiers of grates where it will be consumed."

It thus appears that the thought which is claimed to have actuated the patentee of the patent in suit, and the description of the operation of the device, were public property many years before the Barlow, Edmeston & Beeley patent was granted, and for that reason it was unnecessary for the patentee in the last-mentioned patent to describe the operation of the device of his patent. In the Robinson patent it was made known to the world that coal would fall through the upper grate when the bars forming it were spaced widely apart, and that so falling upon the lower grate it would operate upon the grate underneath. In the light of the teaching of this Robinson patent, it cannot be said that the patentee in the Barlow, Edmeston & Beeley patent made a fatal omission in not describing the operation of the device, in so far as that device is involved, in the plea of anticipation in this case. Following the construction of the Barlow, Edmeston & Beeley patent, and certainly when the same is supplemented by the description of the invention of the Robinson patent, I have no doubt that any person skilled in the art could make and use the device of the complainants' patent. But these English patents are not all that is relied upon by the defendants in this case. There appeared in an English journal called the Practical Mechanics' Journal, published in London in 1857, a description of a furnace called "Robinson's Duplex Furnace." That part of the description which is apposite to the present inquiry is as follows:

"In it there are two separate grates, one above the other. The upper one is formed of a series of tubes opening at their inner ends into the boiler, and at their front ends into a water space, through which the boiler water continually and rapidly circulates. It is this upper grate only which is fired, and, a down draft of air being passed from the upper fire door, the gaseous matter from the green coal consumed on the upper bars is passed right through this mass of fuel. Whatever gases escape unconsumed are then burnt from the flame of the lower grate. The lower grate, formed of common rocking bars, is entirely fed by the half-consumed fuel falling from the upper grate, and, as the

flame from this source ascends, it meets the downward-burning fire from the upper grate, and the joint draft current passes through the flues in the usual way."

A cut is found in connection with this description illustrating the parts of the described device and their operation. From this description and cut it seems to me that the device of the patent in suit is not only obvious in a general sense, but is quite clearly pointed out in every material particular. They point out clearly and distinctly the use of the downward and upward burning grates, the intermediate combustion chamber, the feeding of the fire on the lower grate by the dropping of the half-consumed fuel from the upper grate. The cut clearly suggests the wider spacing of the bars of the upper grate than that of the lower grate; and the function to be discharged by the two, as particularly described, in my opinion, requires, as a physical necessity, the wider spacing of the bars of the upper grate. Without such spacing, manifestly the half-consumed fuel could not fall through the upper grate, and lodge for complete combustion on the lower grate. The description of the elements of the English patent of 1868, and the detailed explanation of their purpose, operation, and results found in the description and drawings of that patent, certainly when supplemented by the description found in the Robinson English patent of 1854, are, in my opinion, so full, clear, and exact as to enable any person skilled in the art or science to which they relate to readily practice the invention of the patent in suit. This is the criterion to determine whether a foreign patent is an anticipation of one granted by the United States. Hanifen v. Godshalk Co., 28 C. C. A. 507, 84 Fed. 649; Seymour v. Osborne, 11 Wall. 516; Simonds Rolling-Mach. Co. v. Hathorn Mfg. Co., 93 Fed. 958.

There are many patents and publications shown by the proof in this case, other than those already alluded to, which, with them, so illustrate the prior art, as, in my opinion, to clearly show that no patentable invention is involved in the device of the patent in suit, except that which may be involved in the zigzag arrangement already referred to. On the whole, I am of the opinion that the prior art shows that there is no patentable invention in complainants' device, unless the same is limited to the zigzag arrangement of the bars of the upper grate; and that, if there was any such invention, a complete anticipation has been shown. The bill must, accordingly, be dismissed.