HAWLEY FURNACE CO. OF NEW ENGLAND v. BRAINTREE & W. ST. RY. CO.

(Circuit Court, D. Massachusetts. August 7, 1899.)

No. 777.

PATENTS—VALIDITY AND INFRINGEMENT—FURNACES.

> The Hawley patent, No. 447,179, for an improvement in downward-draft furnaces, and relating more especially to boiler furnaces, if valid at all, is limited, as to its first claim, to the specific form of devices enumerated and described, and is therefore not infringed by defendant.

This was a suit in equity by the Hawley Furnace Company of New England against the Braintree & Weymouth Street-Railway Company for alleged infringement of a patent for an improvement in downward-draft furnaces.

Benjamin F. Rex and Ephraim Banning, for complainant.
Wm. A. Macleod, for defendant.

COLT, Circuit Judge. This suit relates to letters patent No. 447,-179, dated February 24, 1891, granted to Melville C. Hawley, for "a new and useful improvement in furnaces." The specification says:

"This improvement relates to downward-draft furnaces, and more especially, but not exclusively, for boiler furnaces. Its object is to insure a sufficient downward draft through the upper grate, and at the same time a thorough and economical consumption of the fuel. The leading feature of the

improvement is the combination of a lower upward-burning grate with an upper downward-burning grate, the bars of said upper grate being spaced an unusual distance apart, or so constructed as to provide unusually wide spaces between the bars, whereby ample provision for a downward draft through the upper fire is provided, as well as for the consumption of such partially-consumed fuel as may drop from the upper grate, all substantially as is hereinafter set forth and claimed, aided by the annexed drawings, making part of this specification, and exhibiting a desirable means for carrying out the improvement.   *   *   *   The two rows of tubes, A and B, constitute an upper fire-grate having a series of zigzag spaces, which, while being sufficiently contracted for effectively supporting the fuel during the first stages of its combustion, are yet sufficiently wide to provide for a downward draft, and to allow the fuel, after the earlier part of its combustion is effected, to fall down through the bars of the upper grate, and be caught upon the second fire-grate, C, below.   This last-named grate, C, is constructed of ordinary bars arranged in the ordinary manner, and it is preferably a dumping-grate.   *   *   *   The herein-described improved grate construction is adaptable to almost any ordinary boiler.   The upper grate, including the water-chambers, D and E, can be applied as an attachment to existing boilers substantially in the same manner and as readily as to new boilers, and in either case the lower grate can be arranged, as described, to co-act with the upper grate."

*Fig. 1*

Fig. 2

The Hawley furnace is attached to the outside of the boiler.   It is an external furnace, as distinguished from an internal furnace, which is located within the boiler shell.   It has a lower upward-burning grate, an upper downward-burning grate, an intermediate combustion-chamber, and an escape-flue leading from the combustion-chamber; each end of the upper grate is connected with a water-chamber, which in turn is connected with the boiler.   The bars of the upper grate are spaced widely apart, while the bars of the lower grate are spaced in the ordinary manner.   The leading feature of improvement in the Hawley structure consists in spacing widely apart the bars of the upper grate, whereby ample provision is made for a downward draft, and the consumption effected of such partially consumed fuel as may drop from the upper grate to the lower grate.   The bars or water-tubes of the upper grate are in two rows; the lower row being set at an angle with the upper row, and so forming a series of zigzag spaces. This zigzag arrangement need not receive further consideration, for the reason that the defendant's structure does not contain this feature, and it is not specifically made an element of the first claim of the patent upon which the complainant relies in the present suit. The first claim reads as follows:

"(1) In a combined downward and upward draft furnace, the combination of the lower upward-burning grate, an upper downward-burning grate, an intermediate combustion-chamber, and an escape-flue leading from said combustion-chamber, the bars in said upper grate being spaced widely apart, as de-

scribed, and at each end thereof connecting with a water-chamber in turn connected with the boiler, and the bars in said lower grate being spaced closer together than are the bars of said upper grate, substantially as described."

The elements of this claim are (1) a lower upward-burning grate; (2) an upper downward-burning grate; (3) an intermediate combustion-chamber; (4) an escape-flue leading from the combustion-chamber; (5) the bars in the upper grate spaced widely apart; (6) the upper grate connected at each end thereof with a water-chamber which in turn is connected with the boiler; (7) the bars in the lower grate spaced closer together than the bars in the upper grate. All the features mentioned in this claim were old in the furnace art. Years before the date of the Hawley invention there are found described in patents and publications upward-draft furnaces, downward-draft furnaces, the combined downward and upward draft furnace, with intermediate combustion-chamber and escape-flue leading therefrom, and with the bars of the upper grate spaced more widely apart than the bars of the lower grate, for the purpose of allowing the partially-consumed fuel to pass from the upper to the lower grate; and there is also found, especially in external furnaces of the Hawley type, the intermediate water-chamber connection between the upper grate-bars or water-tubes and the boiler. The prior art is sufficiently illustrated by reference to the Robinson British patent of 1854, the Eastwood British patent of 1862, the two Barlow British patents of 1867 and 1868, the Bosworth patent of 1880, the two Berney patents of 1881, the Post and Sawyer patent of 1886, and the Kearney and Hawley patent of 1888. The Robinson patent shows three downward-burning grates, with different spacings, for the purpose of permitting the fuel to drop from the upper grates to the lower during the process of consumption. In the Eastwood patent there is a combined upward-burning grate, downward-burning grate, intermediate combustion-chamber, and, as shown in Fig. 3 of the drawings, the water-tubes of the upper grate are spaced wider apart than the bars of the lower grate, so that fuel dropping through the upper grate would be caught and consumed on the lower grate. The Barlow patent of 1868 describes a furnace for steam-boilers, comprising an upper downward-burning grate, which is a tubular water-grate; a lower upward-burning grate, which is composed of ordinary grate-bars; an intermediate combustion-chamber; the bars in the upper grate spaced more widely apart than the bars in the lower grate, and the upper tubular bars connected at each end to a water-chamber which in turn is connected with the boiler. The Barlow structure, except as to details of construction, is the same as that described in the first claim of the Hawley patent. The application for the Hawley patent was filed September 6, 1889, and the patent granted February 24, 1891. During this time proposed claims were repeatedly rejected on reference to the Eastwood patent, the Kearney and Hawley patent, and the Robinson patent. One of the rejected claims read as follows:

"(1) In a down-draft furnace, the combination of the lower upward-burning grate and an upper downward-burning grate, the bars in said upper grate being

spaced widely apart as described, and the bars in said lower grate being spaced closer together than are the bars of said upper grate, substantially as described."

In rejecting this claim, the patent office said:

"The claim presented is rejected on the English [Eastwood] patent of record, No. 2,926 of 1862 (Furnaces). No patentable novelty is seen in spacing the bars of the upper grate widely apart for the purpose described, in view of the English [Robinson] patent No. 2,027 of 1854 (Furnaces), which shows a similar construction for an analogous purpose."

After this rejection the patentee inserted in the claim the words, "and at the rear end thereof connecting with a water-chamber in turn connected with the boiler." At the suggestion of the patent office this last amendment was changed so as to read, "and at both ends connected with a water-chamber in turn connected with the boiler." In this form the patent was finally allowed.

The prior art and the proceedings in the patent office clearly seem to limit the novelty of the first claim of the Hawley patent to the specific form of the devices referred to in the claim. The contention of the complainant that the widely-spaced bars of the upper grate was a new feature in the furnace art cannot be maintained. If Hawley had been the first to devise such a structure, his patent should receive a liberal construction, but such is not the fact. It is shown that at the date of the Hawley invention the wide spacing of the upper grate was old, and that such construction was adopted for the very purposes mentioned in the Hawley specification, namely, to secure a downward draft, and to enable the partially consumed fuel to fall from the upper grate to the lower grate. Hawley, in his specification, says that the wide spacing of the upper grate is "for the consumption of such partially consumed fuel as may drop from the upper grate." Robinson, in his patent, says: "The spaces between them [the grates] allowing the partially consumed fuel to pass or fall through to the next tier, where the spaces are smaller than those in the upper tier, thus causing the fuel to be retained for a time, until it becomes further consumed, and then falls to the next tier, and so on." So, too, with respect to the downward draft, Hawley, in his specification, declares that the upper grate is provided with wide spaces, "whereby ample provision [is made] for a downward draft through the upper fire." Robinson, in his specification, says:

"The coal or other fuel is supplied to the top or upper tier, and the bars or tubes are so arranged that the spaces between them are wider than in the next tier, and these are also wider than the spaces in the tier below; so that the fire passing through the top or first set of gratings will fall on and operate for a time on the second set, and then fall through to the third, and so on. The air necessary for combustion is also supplied at the top or upper part of the apparatus above the fire, instead of under it, as heretofore, by which contrivance I obtain a downward draft or current through the whole series of gratings, which causes the smoke from the top or green fuel to pass through its own, and also through the red fires of the succeeding tiers of gratings, whereby it will be consumed."

It is manifest that after the Robinson patent there was no novelty in a wide spacing of the bars in the upper grate of a furnace for the purpose of securing a downward draft, and of enabling the partially consumed fuel to drop through the bars to a lower grate. That this

feature is not specifically mentioned in the Eastwood and Barlow patents, although shown in the drawings, is probably due to the fact that it was recognized as old and well known in the furnace art. The exact degree of spacing the bars of the upper grate is not made a subject-matter of novelty in the Hawley patent, and, even if it were, the defendant does not infringe, because the bars of its upper grate are not so widely spaced as those of the Hawley furnace. The truth is that Hawley claims generally the wide spacing of the bars of the upper grate as the keynote of his invention, whereas this construction was old, and Hawley nowhere states that his spacing accomplishes anything more than what Robinson mentions. If there is any inventive novelty in the first claim of the Hawley patent,—of which I have grave doubt,—it must be limited to the specific form of the devices enumerated and described in the claim and specification. In the recent case of Springfield Furnace Co. v. Miller Down-Draft Furnace Co., 96 Fed. 418, in the circuit court for the Eastern district of Missouri, Judge Adams held, in a carefully considered opinion, that the first claim of the Hawley patent was void for want of invention, in view of the prior art. If, however, the claim is not absolutely void for lack of patentable novelty, it is so clearly limited in scope that the defendant does not infringe, because its furnace does not contain one element of the combination which composes the claim, namely, the water-chamber at the rear end of the upper grate bars or water-tubes. Bill dismissed, with costs.